## Estate of K. I. Sanes.    (No. 1.)

*Decedents' estates—Life insurance—Change of beneficiary—Rules of company—Non-compliance with—Effect.*

In the adjudication of a decedent's estate it appeared that the proceeds of a life insurance policy were originally payable to the estate. The assured had executed and sent to the company's local office a written request for a change of beneficiary, naming his sister. He failed to forward his policy to the home office for endorsement as required by the company's rule.    Upon the assured's decease the company raised no question but made its check payable to the executor and the claimant beneficiary jointly.

It was held that under such circumstances the deceased had done all that was necessary to indicate his intention to make his sister his beneficiary and, in the absence of evidence of a contrary intent, the proceeds of the insurance policy were properly awarded to the new beneficiary.

As to the right to object to an attempted change of beneficiary upon the ground that all the formalities prescribed by the policy have not been observed, a distinction is recognized between the company and the beneficiary originally named in the policy.    Where the

provision as to such formalities is exclusively for the benefit of the company, and the company, waiving its right to raise the objection, takes the position of a stakeholder, such non-compliance is not necessarily fatal to the claim of the new beneficiary in an issue between him and the original beneficiary.

### Orphans' Court—Jurisdiction.

Where the policy was part of the decedent's estate and its proceeds were with the consent of the claimant included in the inventory and account and brought into the Orphans' Court for distribution the latter tribunal acquired jurisdiction.

Argued April 27, 1927. Appeal No. 116, April T., 1927, by residuary legatee from decree of Orphans' Court of Allegheny County, May T., 1926, No. 243, in Estate of K. I. Sanes, deceased. Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ. Affirmed.

Exceptions to decree of distribution of an estate. Before MILLER, P. J., TRIMBLE and MITCHELL, JJ.

The facts are stated in the opinion of the Superior Court.

The court dismissed the exceptions and affirmed the decree of distribution. Sidney Sanes appealed.

*Error assigned* was the decree of the court.

*Henry Ellenbogen,* and with him *Benjamin Rosenshine,* for appellant, cited: Kress v. Kress, 75 Pa. Superior Ct. 404; Burst v. Weisenborn, 1 Pa. Superior Ct. 276; Herrod v. Kimbrough, 83 Pa. Superior Ct. 238; Gannon v. Gannon, 88 Pa. Superior Ct. 239; French v. Providence Saving Life Assurance, 205 Mass. 424; Grant v. Faires, 253 Pa. 232; Young v. Hipple, 273 Pa. 439.

*Maurice Finkelhor,* for appellee, cited: Barner v. Lyter, 31 Pa. Superior Ct. 435; Mikesell v. Mikesell, 40 Pa. Superior Ct. 399; Hani v. Germania Life Insur-

ance Co., 197 Pa. 276; Bonistalli, Admrx. v. Bonistalli, 269 Pa. 8; Scheid v. Storch, et al., 271 Pa. 496.

OPINION BY CUNNINGHAM, J., July 8, 1927:

At the audit by the Orphans' Court of Allegheny County of the account of the Fidelity Title and Trust Company, executor of the will of Kay Isador Sanes, who died May 9, 1925, a contest arose over the disposition of an item therein of $10,300.68, the proceeds of a life insurance policy written upon the life of decedent by the Equitable Life Assurance Society. The proceeds of this policy were claimed by decedent's sister, Fannie Sanes, as the sufficiently designated beneficiary, and it was contended, on the other hand, by Sidney Sanes, a nephew of decedent and a residuary legatee under his will, that they belonged to, and should be distributed as part of, the estate. The auditing judge distributed the entire proceeds of the policy "to Fannie Sanes, sister and assignee of insurance policy claim." Exceptions to the decree of distribution and a petition for a rehearing were filed by Sidney Sanes. The exceptions and petition were argued before the court below, sitting in banc, and a final decree, supported by an opinion, was entered, in which a rehearing was refused, the exceptions dismissed and the decree of the auditing judge affirmed. Sidney Sanes then took the present appeal and his brother Robert the separate appeal to No. 117, April T., 1927.

The errors here assigned are that the court below erred: (a) in taking jurisdiction of the contest over the fund, and (b) in awarding it to Fannie Sanes instead of the estate. The following material facts are undisputed: The policy is numbered 2162213 and is called an "Income Bond." Decedent was forty-four years of age at the time it was applied for and it provided for the payment of a life income of $1,500 a year to the assured, under the description of "the annuitant," beginning when he reached the age of sixty.

The annual premium to be paid during a period of sixteen years was $1,080.75. The policy contained a provision for a refund of the "sum of the payments made to the Society" in the event of the death of the assured during the continuance of the contract and before the date upon which the income was to begin. As the assured died before the income was to begin this provision became operative. In the application for the policy, dated May 15, 1915, decedent directed that the income should be payable to him during his lifetime and that the refund, if any, should be made to his "estate." This provision of the policy reads: "If, during the continuance of this contract, the annuitant should die before the date upon which the income is to begin, the Society will ...... refund to the annuitant's executors, administrators or assigns—, beneficiary, (the annuitant having the right to change the beneficiary) the sum of the payments made to the Society" etc. The amount due under the policy was $10,300.68. On February 7, 1925, about three months before his death, decedent executed, in the presence of a witness, a paper entitled, "Request for Change of Beneficiary." It was addressed to the insurance company on its printed form and was sent by decedent to the office of the Edward A. Woods Agency, the representative of the company at Pittsburgh, in which office it was found when the policy was presented there for payment after the death of the insured. The paper reads: "I hereby certify that there is no existing assignment of my policy No. 2162213 and I now elect to designate a new beneficiary, and request the said Society to make such designation effective by endorsement upon the said policy. (Name of proposed beneficiary) Miss Fannie Sanes, sister." The form contains a printed notice reading: "Please forward policy with this request." There is printed on the reverse side of the policy an appropriate blank form desig-

nated as "Change of Beneficiary Register" and a notice that "Entries in this register are to be made only by the Society at its Home Office in New York. No other entries will be recognized." No entries were made in this register on the policy. The provision of the policy relative to the exercise of the right to change the beneficiary is: "If the right to change the beneficiary has been reserved, and there is no written assignment of this contract on file with the Society, the annuitant may from time to time change the beneficiary or beneficiaries by a written request (upon the Society's blank) filed at its Home Office; but such change shall take effect only upon the endorsement of the same hereon by the Society. If there be no beneficiary surviving at the death of the annuitant, any payment thereafter due hereunder shall be made to the annuitant's executors, administrators or assigns."

With respect to assignments the policy contains the following provision: "No assignment of this contract shall be binding upon the Society unless in writing and until filed at its Home Office. The Society assumes no responsibility for the validity of any assignment." The policy itself was found after the death of the decedent in his safe deposit box in the Peoples Savings and Trust Company of Pittsburgh when the box was opened by the representative of the executor. The company raised no question about the extent of its liability under the policy but, in view of the situation then existing, drew its check for the amount due to Fannie Sanes and Fidelity Title and Trust Company, Executor, and Fannie Sanes endorsed the check to the order of the executor. The policy was then surrendered to the insurance company. At the audit the representative of the executor testified: "Q. Was the check made by the Insurance Company to her? A. Yes, to Fannie Sanes and the Fidelity Title & Trust Company jointly. Their statement at the time was

that they didn't care to pass on the question and Miss Sanes gladly endorsed the check to us to have the matter raised at the audit. Mr. Levin [counsel for executor] explained that to her and explained it was a question of law. We included it in our inventory and in our account and listed it in the audit statement as the claim of Fannie Sanes." Under these facts two questions are raised by the assignments.

1. We have first the question of the jurisdiction of the Orphans' Court to hear and determine the issue. Appellant contends that the money was held by the trust company as stakeholder rather than as executor and that the lower court therefore had no jurisdiction. On this question that court said: "The Fidelity Title and Trust Company took the money and has accounted for it and Fannie Sanes claims it at the audit of this estate as her own by submitting herself to the jurisdiction of this court." In the recent case of Blaszcak's Estate, 90 Pa. Superior Ct. 589, Judge Linn, speaking for this court, reviewed and analyzed the decisions of our appellate courts relative to the jurisdiction of the Orphans' Court to dispose of contests over property alleged to belong to the estate of a decedent and also claimed individually by another. In that case the fund in dispute was not a part of the estate at the time of the decedent's death but had been transferred during her lifetime to the claimant and it was there held that the ownership as between the claimant and the estate should be determined by an issue in the Common Pleas. See also Leadenham's Estate, 289 Pa. 216, in which the securities in dispute were not included in the inventory. Here, however, the policy was a part of the decedent's estate and its proceeds were, with the consent of the claimant, included in the inventory and account and brought into the Orphans' Court for distribution. Under such circumstances we agree with the court below that it had jurisdiction to adjudicate all

questions incident to the proper distribution of the balance shown by the account.

2. The question arising upon the merits is whether this case comes within the established exception to the general rule that in order to effect a change of beneficiary the mode prescribed by the policy must be followed at least substantially. The exception, as stated by Judge GAWTHROP in Gannon, App., v. Gannon, 88 Pa.. Superior Ct. 239, and quoted with approval by Mr. Justice WALLING in Sproat, App., v. Travelers Insurance Co., Etc., 289 Pa. 351, is that "the courts will give effect to the intention of the insured to change the beneficiary by holding that the change has been accomplished where he has done all he could to comply with the provisions of the policy," or, as phrased by Mr. Justice WALLING, "where the policy holder has made every reasonable effort to effect a change of beneficiary it will be given effect." Whether a case should be held to be within the exception must necessarily depend upon the facts of that particular case. In most instances the appeals to our appellate courts have been in cases in which the issues of fact were submitted to a jury under issues framed in the Common Pleas to determine the rights of rival claimants to the proceeds of the policy but here we have an appeal from a decree of the Orphans' Court based upon the facts as found by that court. It is essential to the proper consideration of the question here involved to have a clear understanding of the exact issue in this case. The parties to the issue and the provisions of the policy must be kept in mind. We are not dealing with a question of the alleged assignment by the insured of his rights under the policy but rather of the exercise by him of his right to substitute, as the person entitled to receive under the refunding provisions of the policy the amount which would be due from the company in the event of his death before the date upon which the

income was to begin or after the income payments
began but before their sum equalled the sum of the
premiums paid by him to the company, some one other
than the original beneficiaries. The importance of this
distinction is clearly indicated by Judge RICE in Barner
v. Lyter, App., 31 Pa. Superior Ct. 435, —a case of an
attempted assignment. In view of this distinction we
do not regard the cases of Hani v. Germania Life In-
surance Co., 197 Pa. 276; Bonistalli, Admr., v. Boni-
stalli, App., 269 Pa. 8; and Scheid, App., v. Storch et
al., 271 Pa. 496, cited in the opinion of the court below,
as applicable to the real issue in this case. These cases
hold that there may be a valid parol gift of a life in-
surance policy by delivery without any written assign-
ment and that such transfer may be valid as an equit-
able assignment although not made on the books or
blanks of the insurance company. In each of these
cases however there was a delivery of the policy.
Again, no rights of the company are here involved. It
is fully protected and its payment of the money in the
manner in which it was paid in this case does not affect
in any way the rights of the contesting parties. The
insured under the terms of the policy had the right to
change the beneficiary without the consent of the com-
pany and without the consent of the original benefi-
ciaries, considering, as we should, (Yore v. Booth, 110
Cal. 238, and Marlow v. Paganini, 277 Fed. Rep. 790),
the appellant and other takers under the will as the
beneficiaries originally named. When the formalities
relative to a change of beneficiary prescribed by the
policy have not been observed there is a clear distinc-
tion between the rights of the company and those of the
original beneficiary. This distinction is thus stated by
Judge RICE in Barner v. Lyter, App., supra: "As to
the right to object to an attempted change of benefi-
ciary upon the ground that all the formalities pre-
scribed by the policy have not been observed, a distinc-

tion is recognized between the company and the beneficiary originally named in the policy. Without undertaking to state a general rule that will apply to all cases, we think it safe to say that where the provision as to such formalities is exclusively for the benefit of the company, and the company, waiving its right to raise the objection, takes the position of a stakeholder, such noncompliance is not necessarily fatal to the claim of the new beneficiary in an issue between him and the original beneficiary who was a mere volunteer.''

Undoubtedly the general rule as stated in Gannon, App., v. Gannon, supra, is ''that the holder of a policy of life insurance who desires to change the beneficiary can do so only in accordance with the terms of the policy, Kress v. Kress, 75 Pa. Superior Ct. 404; Herrod v. Kimbrough, 83 Pa. Superior Ct. 238; and Grant v. Faries, 253 Pa. 232;'' but the exception to which we have referred is equally well established. On its facts this case differs from any of our reported cases. It is clearly distinguishable from the last reported case in our Supreme Court, Sproat v. Travelers Insurance Company, Etc., supra. In that case the insured merely wrote the company expressing a desire to change the beneficiary and asking for blank applications for that purpose, which were sent him. A few months later an agent of the company saw the blanks in the possession of the insured and discussed with him the proposed change but nothing was done. The insured told the agent that his policy was mislaid and the agent advised him to forward the blanks properly executed, stating the loss of the policy and requesting a copy, which would be sent him. None of these things was done and after his death the blanks, signed but not filled out with the name of a new beneficiary and without any reference on them to any particular policy, were found among his papers. As stated by Mr. Justice WALLING: ''The fatal defect in her [plain-

tiff's] case is an entire lack of evidence that the insured did all he reasonably could to effect the change of beneficiary. He could have filled up the blank applications and returned them to the company; he could have written the company requesting a copy of his policy, which the agent informed him he could secure; he also could have requested the noting of the transfer on the records at the home office, but he did none of these things.''

Here the insured did everything necessary on his part to effect the change in strict accordance with the terms of the policy except to obey the notice on the printed form to forward the policy with the request. The filling out of the company's form with the name and address of the new beneficiary along with a statement of her relationship to him, the dating and signing in the presence of a witness and the sending of it to the Pittsburgh office of the company, taken together, furnish convincing proof of decedent's deliberate intention to make his sister the beneficiary of the refunding provisions of the policy. True, a mere unexecuted intention is not enough but his intention was carried into execution to such an extent that it would have been necessary for him to have procured, filled up, executed and transmitted another request if he had desired for any reason to cancel his designation of his sister as beneficiary. By delivering the request to the Pittsburgh office of the company he committed himself fully to the election therein contained. Although entitled by the company a ''Request for Change of Beneficiary'' the paper in so far as the insured was concerned amounted to an election to transfer on that day from his estate to his sister all beneficial interest in the refunding provisions of the policy. It was not a request to be permitted to make a change; it was a change and the only ''request'' about it was the request to the company to endorse the change of the policy.

He had a right to make the change at any time, and,
as between his estate and his sister, no endorsement
on the policy would seem to be necessary to transfer
the beneficial interest in the refunding provisions. The
insured made the change and evidenced it by the exe-
cution of the paper. Under his contract with the com-
pany the transfer could not become effective against it
so as to bind it to pay any refund to the new bene-
ficiary until it had agreed to do so by registering her
name on the policy, provided, of course, that it had not
estopped itself in any way from setting up the require-
ment. The provision which the estate now seeks to
invoke was for the company's protection, but it is
not claiming, and is not in need of, any protection.
The company had no control over the vital thing—the
right and power of the insured to change the bene-
ficiary. It had no power to approve or dis-
approve the change and could make no notation
upon the policy, even when forwarded, except by
virtue of and in accordance with the insured's
direction. The essential inquiry therefore is
whether the new beneficiary has successfully met the
burden of showing that the insured intended to make
her his new beneficiary and carried that intention into
execution to such an extent that the court should give
effect to it. There is no evidence that the insured ever
made any effort to change his election to designate his
sister as beneficiary. We have not overlooked appel-
lant's petition for a rehearing in which he averred that
after the hearing in the Orphans' Court he retained
additional counsel and that a subsequent investigation
disclosed that the attention of the insured had been
called by the company's Pittsburgh agency to the fact
that he had not sent in the policy and that he was in-
formed that the request would be retained at the Pitts-
burgh office until the policy was delivered to it. If the
question here were whether the company was estopped

from invoking the provision of the policy relative to endorsement of the change by the conduct of its agent in retaining the designation for three months, the facts which appellant set up in the petition for a rehearing would be material, but in the view we take of the real issue we are not persuaded that there was any abuse of discretion by the court below in refusing this petition. Nor is there any averment that the proof of these facts was not available to appellant by the exercise of due diligence at the time of the hearing. It is earnestly argued on behalf of appellant that the failure of the insured to send in the policy indicates a lack of final decision on his part relative to making his sister the beneficiary; but when all the circumstances are considered, and particularly those surrounding the execution and delivery of the designation which he permitted to remain on file without modification, it is just as reasonable to infer that he intended it to be final and conclusive and merely overlooked the direction to accompany it with the policy. Although different inferences might be drawn from the undisputed facts we are of opinion that the conclusion reached by the court below to the effect that the claimant sustained the burden of bringing her claim within the exception to the general rule is supported by competent evidence and is in accord with the established legal principles to which we have referred. We are not convinced that it should be disturbed.

The assignments of error are dismissed and the decree is affirmed at the costs of appellant.