# Philadelphia School District et al. v. Nardizzi et al.

David L. German, Jr., for plaintiffs.

Byron, Longbottom, Pape & O'Brien and Charles L. Smyth, for defendants.

ALESSANDRONI, J., Dec. 3, 1930.—Quirino Nardizzi entered into a contract with the School District of Philadelphia for the erection of new walls and fences at the Germantown High School in accordance with specifications. The bond was filed by Quirino Nardizzi, principal, and the National Surety Company of New York, surety, in the sum of $4600. Quirino Nardizzi having defaulted, this suit was brought by Bernard McCabe and Thomas McCabe, copartners, trading as Rock Hill Quarry, as the use-plaintiff of the School District of Philadelphia. The defendant, National Surety Company, petitioned for a rule to interplead and for leave to pay the obligation of the bond into court. The rule to interplead was dismissed and leave was granted the petitioners to pay the sum of $4600, less $230 counsel fee, into court to be distributed by an auditor pro rata to the parties entitled to receive it.

An auditor was appointed; testimony was taken by him and a report filed of record. Exceptions were filed to conclusions of law set forth therein, which exceptions were dismissed by the auditor. These questions have now been raised by the plaintiff in the exceptions filed in this court.

The bond was conditioned as follows:

"Now the condition of this obligation is such, That if the said Quirino Nardizzi shall and will promptly pay or cause to be paid to any and all persons any and all sum or sums of money which may be due for labor or materials or both furnished, done, performed or supplied upon, in or about the said buildings or work, provided that proof satisfactory to the Secretary of the Board of Public Education shall be furnished that written notice of the delivery of the material or the labor performed shall have been given to the principal or surety therein within ninety days thereof, and will and shall comply with all the provisions of Rule III of The Board of Public Education and the

provisions of the School Code, approved May 18, 1911; then this Obligation to be null and void; otherwise, to be and remain in full force and virtue.

"It being understood and agreed that no suit shall be brought upon this Bond after the expiration of 2 years from the date hereof."

Some of the laborers and materialmen who presented claims had not complied with some of the conditions of the bond, and the exceptant, who is also a materialman, contends that a failure to comply with any one of the conditions of the bond precludes such a creditor from sharing in the fund paid into court.

The auditor found in his conclusions of law as follows:

1. No claimant is barred from recovery against the fund for failure to have instituted suit on the bond within two years of the making thereof.

2. No claimant is barred from recovery against the fund for failure to have given proof of notice satisfactory to the Secretary of the Board of Public Education of the performance of the labor or delivery of the materials within ninety days thereof.

3. No claimant is barred from recovery against the fund for failure to have complied with Rule III of the Board of Public Education relative to the institution of suit on the bond.

The propriety of these findings is the sole question at issue. The exceptant has withdrawn his exceptions to the auditor's allowance of the claims of the laborers as follows: 45th, 46th, 47th, 48th, 49th, 50th, 51st, 52nd, 53rd, 54th and 55th conclusions of law.

It is first contended that the condition of the bond that no suit can be brought thereon after two years from the date thereof precludes allowance of those claims in which that condition was not met. The bond was dated Sept. 13, 1927. On Oct. 22, 1928, the President Judge of this court granted the surety company's petition for leave to pay the sum of $4600, less counsel fee and costs, into court. On Oct. 26, 1928, this order was amended so as to release and discharge the surety company of all liability upon the bond. Under these circumstances, the institution of any suit on the bond would be of no consequence and would constitute a superfluous and wholly useless gesture. The fund had been paid into court within the two years and distribution *pro rata* by an auditor to the parties entitled to receive it was ordered. Several of the creditors intervened within the two-year period, moreover, and this is equivalent to the institution of suit. In so far as those creditors are concerned who did not intervene, we are of the opinion that after the payment of the fund into court the institution of suit would be of no legal consequence, and, hence, not necessary. The fund was ordered to be distributed to those legally entitled thereto, and the two-year limitation not having run at the time the fund was paid into court, this condition was nullified. Moreover, we are of the opinion that this condition as to time was created solely as an affirmative defense to protect the surety company, and for reasons which will be fully discussed in this opinion the exceptant cannot avail himself of it.

It is next contended by the exceptant that failure to comply with the condition of the bond that "proof satisfactory to the Secretary of the Board of Public Education shall be furnished that written notice of the delivery of the material or the labor performed shall have been given to the principal or surety therein within ninety days thereof" precludes those creditors who have not met this condition from sharing in the fund. The basis of this contention rests on the theory that the exceptant, as one of the beneficiaries under the bond, has the right to set up as against other beneficiaries any defense which the surety might have made. We cannot agree with this contention. The condition stipulated in the bond as a prerequisite to the right to collect there-

under was included in the bond in order to protect the surety. The payment of the money into court absolved the surety from any further claims that might be made against it, and the court ordered that the fund be distributed *pro rata* to those entitled thereto. The obligee of the bond, The School District of Philadelphia, is merely a use-plaintiff for the benefit of the materialmen and laborers who performed labor and supplied materials to the contractor under the original contract. The conditions, in our opinion, were inserted for the protection of the surety and The School District of Philadelphia, but not for the protection of laborers or materialmen. In fact, the conditions are imposed against laborers and materialmen and in favor of the surety and the school district.

A review of the decisions dealing with this problem in Pennsylvania fully supports this view. In fact, in 32 Cyc. 149, it is stated that "defenses do not operate in favor of a surety which are personal to the principal or to a co-surety. Matters personal to a surety may be set up by him in his defense, although they are not available to the principal . . ." With even more reason, it may be asserted that defenses in favor of a surety do not operate in favor of one of the beneficiaries under the bond as against other beneficiaries. The conditions of the bond being created in favor of the surety company and the school district are personal to them and are not available in favor of one beneficiary as against another. In White *v.* Turner, 217 Pa. 25, the contractors for a school building gave to a subcontractor an order on the school board which was accepted. The contractors subsequently became bankrupt and their trustee demanded the money payable by the school board as against the subcontractor. The board paid the money into court and the trustee endeavored to set up as against the subcontractors defenses of consideration and of a new *ultra vires* contract of the board. The Supreme Court, in a *per curiam* opinion, ruled that as the board, by payment into court, had declined to raise questions between itself and the subcontractors the trustee was not in a position to do so. Certainly, a trustee for the contractor has higher rights than other subcontractors.

In Pennsylvania R. R. Co. *v.* Wolfe, 203 Pa. 269, a question arose as to who was the proper beneficiary in a relief association. The relief association paid the money into court and one beneficiary tried to set up as against another beneficiary the fact that the latter had not complied with the rules of the relief association. The court stated that while the association could insist on its legal rights under the rules, by paying the money into court it withdraws from the contest and waives its rights, and the defenses which it might have had are not available in favor of one of the beneficiaries. While this view has not been considered as being valid to its fullest significance (Grant *v.* Faires, 253 Pa. 232), it still applies where no vested legal rights are impaired, as here.

In Sanes's Estate, 91 Pa. Superior Ct. 466, the original beneficiary of the life insurance policy was the insured's estate. The deceased forwarded to the company a request to change the beneficiary so as to name his sister, but failed to comply with the requirements of the insurance company for a change of beneficiary. In a dispute between the estate and the sister the court ruled in favor of the sister, stating: "When the formalities relative to a change of beneficiary prescribed by the policy have not been observed, there is a clear distinction between the rights of the company and those of the original beneficiary. This distinction is thus stated by Judge Rice in Barner *v.* Lyter, *supra:* 'As to the right to object to an attempted change of beneficiary upon the ground that all the formalities prescribed by the policy have not been

observed, a distinction is recognized between the company and the beneficiary originally named in the policy. Without undertaking to state a general rule that will apply to all cases, we think it safe to say that where the provision as to such formalities is exclusively for the benefit of the company, and the company, waiving its right to raise the objection, takes the position of a stake-holder, such noncompliance is not necessarily fatal to the claim of the new beneficiary in an issue between him and the original beneficiary who was a mere volunteer.' "

In the case at bar a similar situation has arisen, and we are of the opinion that the formalities which were created in favor of the surety company can only be insisted upon by the surety and not by one of the beneficiaries under the policy.

In so far as the school district is concerned, it must be remembered that the obligation was that of Nardizzi and the surety company and not that of the school district. No obligation on the part of the school district appears, and in fact no interest of the school district has been set forth by any of the parties in the case. It, therefore, cannot be averred that a failure to comply with this condition would prejudice the school district in any way.

The final argument of the exceptant is that the failure of some of the cred-itors to comply with Rule III of the School Board of Philadelphia precludes them from sharing in the fund. That rule provides that a bond shall be fur-nished by contractors with sufficient surety, conditioned on the payment of all sums supplied in or about the work, "provided that proof satisfactory to the Secretary of the Board of Public Education shall be furnished that written notice of the delivery of the material or the labor performed shall have been given to the principal or surety therein within ninety days thereof." It fur-ther provided, upon the furnishing of an affidavit that the work and labor had been done and payment not made, a claimant should be furnished with a certified copy of the contract or bond and authorized to institute suit in the name of the school district, provided that the school district is put to no expense and is indemnified against costs, and provided that no suit shall be brought upon the bond after two years from its date. It can be seen that this rule really constitutes the conditions which were imposed in the bond itself and which conditions have been heretofore discussed. The only other stipu-lation contained therein was as to the procedure of a claimant in instituting suit, and the purpose of this was to indemnify the school district against any expense of costs involved. In accordance with the views expressed above, the institution of suit after the money had been paid into court was needless, and, therefore, the interest of the school board in relieving itself against costs was satisfied. Any further interest lies only in the surety, and the reasons for refusing to permit one beneficiary to set up a failure to comply with some of the conditions of the bond as against other beneficiaries have been fully dis-cussed in this opinion.

While the auditor makes much of the fact that the bond only requires the contractor, himself, to comply with Rule III of the school board (in a gram-matical sense), we have considered the matter with a view to its substantive aspects. We are of the opinion that with the exception of the provision in Rule III to indemnify the school board against costs, that rule was designed for the protection of the surety, and, therefore, is subject to the same consid-erations as those previously considered in discussing the conditions of the bond.

The entire fund due on the bond was paid into court for distribution *pro rata* amongst the parties legally entitled thereto, who unquestionably are those

who furnished labor and materials for the operation. All considerations of equity and justice require that all the members of this particular class who contributed their labor or their merchandise should be treated alike. We have found no case in equity where a failure to meet the mere formal requirements intended to protect the obligor have been invoked in favor of those beneficiaries who have complied with the formalities as against those who have not so complied, where the obligor himself has not sought to raise the question. In fact, the surety in this case, as the assignee of some of the claimants, is endeavoring to share with the other claimants.

For the foregoing reasons, therefore, we are of the opinion that the exceptions to the auditor's refusal to sustain exceptions to the auditor's report should be dismissed.

And now, to wit, Dec. 3, 1930, the exceptions to the auditor's refusal to sustain plaintiffs' exceptions to the 1st, 2nd, 3rd, 4th, 5th, 10th, 11th, 12th, 13th, 14th, 15th, 23rd, 24th, 27th, 30th, 31st, 34th, 38th, 43rd and 44th conclusions of law as set forth in the auditor's report are dismissed and distribution ordered in accordance with the auditor's report.