## Price's Estate

*Jesse R. Evans*, for accountant.

*J. Stroud Weber*, for Anna D. Price, exceptant.

*William Moran, Jr.*, and *Harry Bartman*, for claimants.

*High, Dettra & Swartz*, for receivers of E. H. Price & Company.

*Wallace M. Keely*, for Leona Hunsberger, legatee.

HOLLAND, P. J., July 5, 1935.—The first account of Security Trust Company of Pottstown, executor of the will of decedent, was examined and audited by the court on January 24, 1934, and further audit was held on

March 2, 1934, it appearing that due notice of the filing of the same in his office, and of the time and place of audit by the court, had been given by the register of wills, as required by the act of assembly and the rule of court.

Edwin H. Price died on September 29, 1928, leaving a last will and testament bearing date of October 16, 1926, which was duly probated on October 19, 1928, and on which the present letters were granted to the accountant. A recital of the terms of the will is not necessary, as the estate is grossly insolvent, except that particular parts of the will will be hereinafter referred to insofar as they have a bearing upon the disposal of claims and upon questions of interpretation.

The widow of the decedent, Anna D. Price, survived him, and, having been married to decedent after the date of the will, she is entitled to such purparts, shares, and dividends of his estate as she would be entitled to as provided by section 2 (a) of the Intestate Act of June 7, 1917, P. L. 429.

The testator was possessed of personal property at the time of his death of the value of $35,867.79. The account was filed on December 2, 1933, and a supplemental account was presented at the audit. The combined balance of principal personalty, the proceeds of real estate and income, as shown by the supplemental account for distribution, is $42,242.54, composed of 376 shares of E. H. Price & Company, Inc., carried at $18,800, a mortgage of Maples Construction Company in the sum of $4,000, two watches carried at $25 and cash in the sum of $19,-417.54. It was clearly demonstrated at the audit that E. H. Price & Company, Inc., was long since in receivership and that the stock was worthless. It is the subject matter of an exception which will hereinafter be considered and dismissed; it being worthless through no fault of the accountant, the accountant is allowed an additional credit of $18,800, leaving a balance for distribution of $23,442.54.

Anna D. Price filed three exceptions. The first exception is to the inclusion as a part of the assets of the estate of the sum of $10,971, the proceeds of a policy upon the life of the decedent which was paid to the accountant upon the death of the decedent by Girard Life Insurance Company, the policy being no. 4216 of said company. The accountant charges itself on the debit side of the personal principal account, and the exceptant in this exception, in effect, claims the money as her property on the ground that it does not and never did form any part of the estate of the decedent, and, having in fact been paid to the estate by the company, should under all the facts be awarded to her by this court. No question of jurisdiction was raised but even had such a question been raised there can be no doubt that this court has jurisdiction, the money having been accounted for as a part of the estate.

Eleanor S. Price was the first wife of the decedent, and was the original named beneficiary in the policy. The style of the beneficiary's name appearing in the policy was "Eleanor S. Price, wife of the insured". She died in the lifetime of the decedent and he subsequently married the exceptant, Anna D. Price, his second wife, who survived him. Subsequent to his marriage to the exceptant and a few months prior to his death decedent in blue ink crossed out the name "Eleanor S. Price" in the original application and printed immediately following the crossed out name "O. K. by E. H. Price to Anna K. Price." Although this latter notation was printed and not written so that the handwriting of decedent cannot be identified, there can be no doubt that, in fact, the notation was made by the decedent, because the evidence clearly demonstrated that he had exclusive control of the policy and application up to the time of his death. The policy and application were found in a safe deposit box at The National Iron Bank of Pottstown to which the decedent had exclusive access according to the records of the company, he being the person who had rented the box

from the company. After his death the trust officer of the executor, a representative of The National Iron Bank and a brother of Anna D. Price together went to the box and it was opened in the presence of the three. The policy and application were taken out and delivered to the said trust officer of the executor and at that time it was in the identical condition as when it was placed in evidence at the audit with the notations as described. We therefore find as a fact that these notations were put upon the application of the policy by the decedent.

There can be no doubt that, decedent's first wife being dead, it was his intention to substitute for her as beneficiary his second wife, Anna D. Price, and that he used these means to execute his intent. Anna K. Price and the exceptant, Anna D. Price, it was admitted, are one and the same person. The proceeds of the policy, however, were paid to the executor by the company because the substitution of beneficiary had not been done in strict compliance with the rules of the company, so that it treated the case as though there were no named beneficiary, which, according to its construction of the terms of the policy, left it no alternative but to pay it to the estate of the insured, the decedent. This was proper as between the company and Anna D. Price as it had a perfect right to protect itself, its own rules as to substitution of beneficiary not having been complied with. This action on the company's part, however, had no effect as to the claims upon the money between Anna D. Price and the estate of decedent: Sanes' Estate (No. 1), 91 Pa. Superior Ct. 466.

It has long since and consistently been held that, where it was the intent of the insured to name a certain person beneficiary, lack of compliance with a formality will not deprive the intended beneficiary of the proceeds of the policy at the death of the insured: Scott v. Dickson, Admr., 108 Pa. 6. This is especially true where the naming of the intended beneficiary is the substitution of a beneficiary for one that previously had been named but

no longer exists, rather than the change of one existing beneficiary to another existing beneficiary. This case seems to be governed by Sanes' Estate (No. 1), supra. The possible insolvency of the decedent at the time of the substitution above described has no bearing on the case, as a substitution by an insured, even though insolvent, of his wife as beneficiary in place of his estate is not regarded as fraudulent upon his creditors, especially in light of the declared public policy of Pennsylvania expressed in the Act of June 28, 1923, P. L. 884, to favor wives and children as against creditors of insured husbands and fathers: Stutzman, Admr., v. Fidelity Mutual Life Ins. Co. et al., 315 Pa. 47.

We are of the opinion under all the facts that the proceeds of this policy are the property of the exceptant; the first exception is sustained and the said proceeds of $10,971 will be awarded to Anna D. Price out of the cash forming a part of the personal principal accounted for, wherein it is included.

The second exception seeks to surcharge the accountant with $18,800, the appraised value of 376 shares of the stock of E. H. Price & Company, Inc., which has since become worthless, the company having gone into a receivership and being grossly insolvent. The ground alleged by the exceptant for this surcharge is that the executor, after the death of the decedent, neglected to dispose of the stock and it gradually became reduced in value until the company was finally in a receivership. The evidence taken at the audit does not support the exceptant's contention. In the first place it was shown that the stock held by the estate was subject to a restricted option to two individuals, which restriction was in terms stamped on the face of the certificates, rendering it practically unsalable for a long period of time to anyone but these two individuals. They neglected to avail themselves of the opportunity of purchasing the stock and there was practically no market for it. A representative of the executor attended the meetings of the directors and gave

the operations of the company the most careful supervision. It was not shown that there was ever a bona fide offer for the stock at any price. The evidence clearly shows that the executor did all in its power to conserve the assets and assist in the operations and progress of the company, but without avail because of economic and other factors beyond its control. There was not in our opinion the slightest evidence upon which a surcharge could be based; the second exception is therefore dismissed.

The third exception urges that the cost of the citation requiring the executor to file the account now before the court, in the sum of $10.50, should be paid by the accountant and a surcharge made accordingly. Although the account was delayed for a long period of time, it appears that the difficulties of the accountant were such that it should not be surcharged with these costs; the third exception is therefore dismissed.

The testator died seized and possessed of certain real estate situated at Charlotte and Grace Streets, Pottstown, Pa. This real estate was sold by deed dated March 27, 1930, and joined in by the executor and by Anna D. Price, the surviving widow. The balance of the proceeds of said sale, $9,762.59, is here accounted for and is claimed by the widow as follows: (1) $4,881.29, being one half thereof, on the ground that she became entitled upon the testator's death to a one-half interest therein by virtue of her marriage to testator subsequent to the execution of his will; (2) $4,881.30, being the other one half thereof, on the ground that she has claimed her $5,000 allowance thereout.

Although each claim is made separately, they both involve the same questions and will be considered together. As to the second claim, it may be noted here that pursuant to the widow's petition the $5,000 allowance claimed by her was allowed by decree of this court dated March 21, 1934, out of the proceeds of the sale of the real estate in question. Such allowance is of course neces-

sarily subject to the rights of creditors and has not actually been paid to the widow, but the fund has instead, as already stated above, very properly been accounted for here.

Since testator married after executing his will he, under section 21 of the Wills Act of June 7, 1917, P. L. 403, must be deemed to have died intestate, and his widow "entitled to such purparts, shares, and dividends of the estate, real and personal . . . as if [he] had actually died without any will." And since testator left no issue the "purparts, shares, and dividends of the estate" are determined by section 2(a) of the Intestate Act of 1917, as amended by the Act of July 11, 1917, P. L. 755, to be "real or personal estate, or both, to the aggregate value of five thousand dollars" in addition to the widow's exemption, "and if such estate shall exceed in value the sum of five thousand dollars, the surviving spouse shall be entitled to the sum of five thousand dollars absolutely, to be chosen by . . . her from real or personal estate, or both, and in addition thereto shall be entitled to one-half part of the remaining real and personal estate". So much for the quantum of testator's estate to which the widow is entitled in the ordinary situation, but this case is complicated by the insolvency of the estate.

What is the maximum effect on the will of testator's subsequent marriage? Section 23 of the Act of April 19, 1794, 3 Sm. L. 143, from which section 21 of the Wills Act has descended, is, so far as this question is concerned, practically identical. This section of the prior act was involved in Coates v. Hughes, 3 Binn. 498 (1811), and Tilghman, C. J., there says, at page 508:

"In such case [marriage and birth of child after making will], says the act, the testator shall be deemed to die intestate, so far as shall regard the widow and child. Although not expressed, it is necessarily implied, that the intestacy shall go no further. . . . Upon the whole, I am of opinion that the will . . . was not revoked *in toto*, but remained in force so far as related to the appoint-

ment of executors, and the power given them to sell the lands for payment of debts."

That case was cited with approval and quoted in Newlin's Estate, 209 Pa. 456 (1904). In the same case, Yeates, J., in a concurring opinion said, at page 511:

". . . it is equally clear from our whole system of laws, as well as from the . . . act under consideration, that heirs can only take under the ancestor the remainder of his estate real and personal, after payment of his debts."

Therefore the only effect of testator's subsequent marriage, under section 21 of the Wills Act, supra, is that the widow's share is to be determined by the Intestate Act: in all other respects the provisions of the will stand with full force.

In the first paragraph of his will after the commencement clause, testator provides: "I order and direct that my Executor hereinafter named shall pay all my just debts and funeral expenses as promptly after my decease as possible." And in the third from the last paragraph thereof, he provides: "I hereby order and direct my Executor hereinafter named to sell and dispose of any real estate I may die seized of at either public or private sale". The intermediate provisions of the will dispose of nine pecuniary legacies totaling $91,500, a piece of real estate by specific devise, and the residuary estate. It seems clear that the positive direction to sell testator's real estate is sufficient to work an equitable conversion thereof, particularly so since practically all bequests are pecuniary, and even more so in view of the direction to pay debts.

The next step is to determine whether the creditors of decedent are entitled, against his real estate or the proceeds of sale thereof. No creditors took steps to secure a lien on decedent's real estate under section 15(a) of the Fiduciaries Act of June 7, 1917, P. L. 447. Since the property in question was not sold until much more than one year after decedent's death, are the proceeds of the

sale now accounted for discharged from the lien of decedent's debts because of the failure of the creditors to secure liens under section 15(a) of the Fiduciaries Act? In Mustin's Estate, 194 Pa. 437 (1900), the court held, at page 439:

"Our conclusion is that the will worked a conversion; that the conversion was complete at the death of the testator, and that from that moment the whole fund was assets for the payment of debts, and freed as to any part of it from the operation of the act relating to the lien of decedent's debts".

To the same effect are Middleby's Estate, 249 Pa. 203, 205, and McGookin's Estate, 21 D. & C. 123. Therefore, notwithstanding the failure of the creditors to secure liens upon decedent's real estate within a period of one year following his death, the proceeds of the sale now accounted for are assets for the payment of those debts.

The last point to be considered is whether the widow, under section 2(a) of the Intestate Act, supra, is entitled to one half of the proceeds of the sale of the real estate in question and to her $5,000 allowance out of the other one half thereof, subordinate to or paramount to the rights of creditors. In Robeno et al. v. Marlatt et al., 136 Pa. 35, testator devised real estate to his wife, whom he named executrix and to whom he gave power to sell, but children were born after executing the will. The widow purported to sell the realty as devisee of the testator and the afterborn children brought ejectment against the purchasers. The court entered judgment for the afterborn children, holding them entitled to the real estate itself and not to be compelled to look to the proceeds, because the widow purported to convey as devisee and not in exercise of the power of sale given her as executrix. It is this distinction which is the important feature of that case for our purposes here. The court there says, at page 42:

"It is true that, as to after-born children, a will is not absolutely void, but is void only in so far as the shares

of the children are affected by it: Coates v. Hughes, 3 Binn. 498. The appointment of a testamentary guardian, and a power of sale for the payment of debts, have been upheld against such children, because they are not in conflict with either the letter or spirit of the act of 1833 [i. e., to which section 21 of the Wills Act is the successor], above quoted. . . . A power of sale for the payment of debts, like the appointment of an executor, relates to the administration of the estate, payment of debts, etc. The claims of creditors are of course superior to the rights of heirs or distributees. The latter take nothing until the decedent's debts are paid. Hence, a power of sale for the payment of debts, and the execution thereof, cannot injuriously affect the right of afterborn children 'to such purparts, shares, and dividends of the estate real and personal,' of their deceased parent, 'as if he had actually died without any will.' "

Thus, had the widow sold as executrix in exercise of the power to sell, for the payment of debts, the court has clearly indicated that the sale would have been proper and the children would have been entitled to share in the proceeds only after all creditors had been paid. And as afterborn children stand on the same footing with a wife married after execution of the will, that distinction between the facts of the case cited and those of the case at bar is of no consequence.

Gilbert's Estate, 227 Pa. 648 (1910), involved the question of the constitutionality of the Act of April 1, 1909, P. L. 87, to which section 2(a) of the Intestate Act is the successor. It was contended that the act was unconstitutional because the provision for the widow's $5,000 allowance was an "exemption law". In rejecting this argument, the court held, at page 652:

"That it is not an exemption act and was not intended so to be, clearly appears in the express provisions of the act which at the very outset provides that 'the real and personal estate of a decedent, whether male or female, remaining after payment of all just debts and legal

charges, which shall not have been sold, or disposed of by will, or otherwise limited by marriage settlement, shall be divided and enjoyed as follows' [these precise words are now contained in section 1 of the Intestate Act of 1917]. It is only the real and personal estate remaining after payment of all just debts and legal charges that is made the subject of descent and distribution under the subsequent clauses relating to the widow. The widow takes nothing under this act until the debts and legal charges have been provided for. . . . The debts of the intestate must first be paid out of his estate, and when this is done descent and distribution follow according to the provisions of the act of 1909. It is argued that if the widow's share is set aside by the appraisement the rights of creditors may be defeated, but this argument is without merit because the rights of creditors must always be protected by the courts and the personal representatives must see to it that the debts are paid before any distribution is attempted to be made. . . . Again, the debts of a decedent are a lien upon his property for a period of two years after his death, and if the widow should take any property before a final distribution of the estate she would take it subject to these liens which could be asserted against the estate even after the share of the widow had been set apart."

In her brief the widow relies upon Cunningham's Estate, 137 Pa. 621, as authority for the proposition that since the widow's share in the estate is determinable by the intestate laws the conversion contained in the will is superseded as to her. That case involved an election to take against the will and the effect of a conversion of realty into personalty thereon. The court held the conversion to have been superseded by the election to take against the will, but that decision is consistent with and not in conflict with our conclusion in the present case. First of all, we have already stated that the quantum of the widow's interest here is measured by section 2(a) of the Intestate Act. At the time Cunningham's Estate was

decided, the surviving widow of an intestate was not entitled to an absolute interest in her husband's real estate, but only to a life interest in part thereof. Consequently, if the conversion had not been held to be superseded by the taking against the will, the widow there would have received the entire proceeds of the realty as personalty, instead of merely a life interest in part of the proceeds as realty. In other words Cunningham's Estate simply fixes the quantum of the estate which the widow is entitled to, by the intestate laws and by the intestate laws alone, not partially by the intestate laws and partially by the will. The conversion there went beyond being merely an administrative provision, as it is here, and if allowed would have had the effect of a testamentary disposition in the widow's favor, to which effect she was not entitled as she elected to take against the will. And secondly, in Cunningham's Estate no rights of creditors were involved, the sole question being how much the widow was entitled to.

Therefore we hold that the rights of Anna D. Price to claim the proceeds of the sale of the realty in question, one half on account of her $5,000 allowance and the other one half as her further intestate share, are, by virtue of the conversion worked by the will, still subject to the claims of decedent's creditors to said proceeds. Since these proceeds are insufficient, when added to the other assets available for creditors, to pay them in full, nothing thereof remains for the widow.

Anna D. Price also claims one half the rents collected by the executor on premises 330 North York Street, Pottstown, which were also owned by testator at his death but which were specifically devised by his will. Although the widow acquired a one-half interest therein under the Intestate Act despite the devise, her claim must be disallowed since the rents claimed were more than consumed by charges upon the real estate and expenses incidental thereto.

The account as modified by this adjudication is confirmed.

And now, July 5, 1935, this adjudication is confirmed nisi. If no exceptions are filed within 10 days from this date the adjudication is confirmed absolutely according to rule, and counsel for the accountant will forthwith prepare schedule of distribution, certify that the same is correct and in conformity with this adjudication, which, when approved by the court, will be attached to and form part of the same; and Security Trust Company of Pottstown, executor as aforesaid, will pay the distributions herein awarded.