Potter Title & Trust Co., Admr., Appellant,
*v.* Carlson.

Argued October 1, 1946. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Louis Vaira,* with him *Coleman Harrison,* for appellant.

*John A. Metz,* with him *Metz & Metz,* for appellee.

OPINION BY HIRT, J., December 11, 1946:

When John Beres died on April 26, 1943, he was a member in good standing of the Hungarian Reformed Federation of America, a beneficial society. For more than twenty years he had held a benefit certificate for $1,000 issued by the federation, payable at his death. In it, his daughter Elizabeth Beres, living in Hungary, was the named beneficiary. On his death, two adverse claims were made on the federation for payment of the face of the certificate; one by a Swedish consul on behalf of the named beneficiary, and the other on behalf of Andrew Vereb and Mary Vereb, his wife, who were specific and residuary legatees under decedent's will. Suit was brought by the administrator of Beres' estate, and the federation, disclaiming interest and conceding liability on its obligation, paid $1,000 into court. The

Swedish consul on behalf of Elizabeth Beres was interpleaded in this action. The issue to determine title to the fund, was tried by a judge without a jury and resulted in a verdict and judgment in favor of the representative of Elizabeth Beres, the named beneficiary. Two of appellant's assignments of error go to the refusal of the court to enter judgment in its favor on the whole record, notwithstanding the verdict. A third assignment charges error in the refusal of the court to admit in evidence the will of decedent made in 1940. On this ground appellant contends that, at least, a new trial must be granted.

The representative of Elizabeth Beres, was the interpleaded claimant and under the Rules of Civil Procedure, Goodrich-Amram, §2301 et seq., should have been made the plaintiff in the interpleader issue. *Waples et al. v. Police Bene. Asso.,* 156 Pa. Superior Ct. 592, 41 A. 2d 342. But it is unimportant that the procedural rules were not strictly complied with, or that the administrator of decedent's estate, the original plaintiff in the action, was not made defendant in the interpleader. No additional burden was imposed on the administrator of the estate by making it plaintiff in the issue. Since the estate was the alleged substituted beneficiary, the burden of proof was upon decedent's administrator (regardless of whether plaintiff or defendant in the issue) to establish its right to the death benefits as against the beneficiary named in the benefit certificate. *Burton's Estate, (Jordan's Appeal),* 116 Pa. Superior Ct. 249, 176 A. 819.

The general finding of the trial judge on the facts in this case, upon which judgment was entered, was as much a verdict as though found by a jury. *Jann v. Linton's Lunch,* 150 Pa. Superior Ct. 653, 29 A. 2d 219. The representative of Elizabeth Beres, therefore, with the verdict in her favor, is entitled to all favorable inferences fairly deducible from the testimony.

John Beres lived with Andrew Vereb in Pittsburgh beginning in 1931 and later with Vereb and his wife

until the date of his death. Throughout the period Beres paid for room and board supplied by the Verebs and never was under financial obligation to them. Appellant contends that a change of beneficiary to the estate of John Beres was consumated in law by testimony to this effect: Beres, then about 77 years old, became seriously ill in January 1943 and was unable to work thereafter. On March 12, 1943, Coleman Harrison, a member of the Allegheny County Bar, called on John Beres at the request of Louis Vereb. On the understanding that Beres wanted to change the beneficiary of his certificate to Andrew and Mary Vereb (Louis' parents), Harrison prepared a written request to that effect and forwarded it on March 18, 1943, to the home office of the federation in Washington, D. C., together with the benefit certificate. The writing purported to have been signed by John Beres by mark in the presence of three witnesses. On March 20, 1943, the secretary of the federation returned the certificate to Harrison and wrote him that since the Verebs were not relatives of John Beres they could not, legally, be named as beneficiaries. The secretary did advise Harrison, however, that there was no legal objection to a change of beneficiary to Beres' estate. Thereupon Harrison prepared a written request for change of beneficiary to the estate of John Beres which purports to have been signed by him in duplicate, by mark, on March 20, 1943, in the presence of two witnesses. One original was sent by Harrison to the secretary of the local branch in Pittsburgh with a request to have the branch seal attached; the other original was sent to the federation in Washington, D. C., but not until April 12, 1943, together with the benefit certificate for endorsement thereon of a change of beneficiary as requested. On April 14, 1943, the Supreme Secretary of the federation wrote Harrison as follows: "I have instructed the president and clerk of the branch Mr. Beres is a member of to have Mr. Beres sign a change of bene-

ficiary to his estate if he wishes to do so and send the paper in so I could change the beneficiary. As soon as I hear from the branch I will let you know and if Mr. Beres signed the paper I will change his beneficiary accordingly." The following day, Harrison again wrote the federation: "I wrote you in my last letter that Mr. Beres is close to death now, according to his physician. He cannot talk and therefore he would not be able to advise your local representative of his desire. However, on March 20, 1943, and prior thereto, his health was not so bad and he was then able to change his beneficiary and he did so." On April 27, 1943, Harrison notified the home office of the federation that Beres had died on April 26, 1943, and requested payment of the death benefit to Andrew and Mary Vereb as "administrators of his estate." On May 3, 1943, the secretary of the federation wrote Harrison refusing payment as requested for the reason that "the beneficiary named in his certificate is his daughter, Elizabeth Beres." With this letter the secretary sent Harrison a copy of the by-laws of the federation. Harrison had also written a number of letters to the secretary of the local branch requesting his coöperation to secure the requested change of beneficiary, without success.

Beres, by the terms of his certificate, had the right to change his beneficiary ". . . by filing with the Secretary of the Supreme Council a written request under seal of the branch of which the insured is a member, or duly acknowledged, accompanied by this certificate . . ." and by complying "with all the Laws, Rules and Regulations of the said Federation as they now exist or may be hereafter modified or enacted." Section 74(a) of the by-laws provided: "A member, with all his membership privileges is entitled to change his beneficiaries if he reports his request to the branch, signs this request in the presence of two officials of the branch, and sends it with the seal of the branch affixed, and with his original

certificate, to the Secretary of the Federation. Such a change of beneficiaries is legal and effective only if his request for such a change is affixed to the original certificate by the Secretary of the Federation himself." Thus, it is the intent of the by-law that a member sign a request for a change of beneficiary *in the presence of two officials of the local branch* of which he is a member. When so authenticated as the free will of the member, the by-law contemplates that the application for change of beneficiary be sent with the membership certificate, to the secretary of the national federation. The attempted change of beneficiary in this case was not made in compliance with the above by-law. It is well settled that the right of a member of a beneficial society to change his beneficiary is subject to the qualification that such right must be exercised in accordance with the by-laws, otherwise the society is not bound to recognize such attempted change of beneficiary. *Coffey v. The Maccabees,* 91 Pa. Superior Ct. 136. Where, however, the policy holder had made every reasonable effort to effect a valid change of beneficiary, it will be given effect. This is the only exception to the foregoing rule that the mode prescribed by the laws of the association for change of the beneficiary must be followed. The fact that the society, here, disclaimed interest and paid the fund into the court does not affect the legal rights of either claimant as beneficiary of the certificate. It is said in *Smith v. John Hancock Mut. L. Ins. Co.,* 150 Pa. Superior Ct. 97, 103, 27 A. 2d 450: "We cannot regard as accurate the obiter statement in Pennsylvania R. R. Co. v. Wolfe, supra (203 Pa. 269, 52 A. 247) to the effect, that the deposit of the fund in court constitutes such a waiver on part of the society as to change the legal rights of claimants. For, in our opinion, a society which is legally liable to pay money to one of two parties, and not knowing to which, pays it to a stakeholder, that the law may determine to whom it belongs, has not waived any right.

Under such circumstances to pay the fund into court or to a stakeholder is proper practice and thereby no rights are lost." *Sproat v. Travelers' Insurance Co.*, 289 Pa. 351, 137 A. 621; *Gannon v. Gannon,* 88 Pa. Superior Ct. 239.

The fatal defect in plaintiff's case, based on the exception to the rule, is the lack of credible evidence that the insured intended to change his beneficiary and that he did everything reasonably possible under the circumstances to accomplish it. The court in banc found: "The testimony of all the witnesses who were offered to prove the execution of these papers [the two requests for change of beneficiary referred to, above] is so uncertain and contradictory that the trial Judge was not bound to accept any of it as proof that the papers were actually executed by Mr. Beres." If the trial had been before a jury, it certainly would have been necessary to submit this testimony to it. Circumstances also cast doubt upon the integrity of both requests for change of beneficiary, allegedly signed by Beres, by mark. He was not illiterate and was able to sign his name at least until March 29, 1943. During the period when Harrison was attempting to effect a change, Beres himself had several opportunities to change his beneficiary in accordance with the by-laws but did not do so. At three A. M. of a morning, not definitely fixed, in March 1943, the president of the local branch visited Beres at his request. He was very ill but was rational and said nothing (according to this witness) about a change of beneficiary. Two days later the president and the secretary of the branch went to the Vereb home with the necessary forms, prepared to have him execute a request for change of beneficiary if he desired it. They found Beres able to be downstairs but were prevented by Mary Vereb from talking with him alone, and they were evicted from the home by Louis Vereb, her son. Beres had been told the purpose of their visit but said nothing indicating an intention to change

his beneficiary. On April 3, 1943, a committee appointed by the president of the branch (because of Harrison's charge of lack of coöperation) called on Beres the same evening to effect a change of beneficiary if that was his desire. The testimony is that Beres when told of the purpose of their visit said: "No, I don't want to do nothing now. Let it stay the way it was before."

The issues raised by the conflicting testimony were for the trial judge and there is ample competent testimony, regardless of which party had the burden of proof, supporting his conclusion that John Beres did not execute the paper dated March 20, 1943, and that he did not intend to change the beneficiary named in his certificate. The court in banc took the same view of the proofs and entered judgment on the verdict.

The trial judge was right in refusing to admit in evidence the will of John Beres made on September 9, 1940, as evidence of an intention, almost three years later, to change the beneficiary of his certificate in the federation. Under the will offered in evidence, the Verebs were to receive Beres' entire estate (except real property in Hungary) including the proceeds of the benefit certificate in question. The designation of a beneficiary in a testamentary paper is insufficient to accomplish such change, contrary to the regulations of the beneficial society. *Stoll v. Boyle (Casserly, Appellant)*, 116 Pa. Superior Ct. 64, 176 A. 43. At best, Beres' will was but a declaration of intention as of the date of its execution and was too remote in point of time to have any bearing on his intention almost three years later. Cf. Henry, Trial Evidence, 3rd Ed., §22. The fact that the insured never made an application for a change of beneficiary thereafter, in accordance with the by-laws when he could have done so, indicates an abandonment of the intention gratuitously expressed in his will.

Judgment affirmed.