## Mackey Estate

*Wisler, Pearlstine, Talone & Gerber*, for accountant.
*J. Ernest Nached*, for claimants.

VAN RODEN, P. J., thirty-second judicial district, specially presiding, January 7, 1948.—Decedent was a member of the Brotherhood of Railroad Trainmen. On April 1, 1936, this organization issued to him a certain certificate of insurance, designated as certificate I. R. Q. No. 89652, which provided for the payment of death benefits in the sum of $1,500. The original beneficiary named therein was decedent's wife, Virginia Mackey. She predeceased him on October 28, 1944.

Decedent had no children of his own, but his wife had three children by a previous marriage, two daughters and a son. There was ample evidence that decedent considered himself to be in loco parentis to these children, and customarily referred to them as his own. They had been members of his household for many years, and after his wife's death he lived with one of these children until his own death.

On December 27, 1944, decedent, who was then physically infirm as the result of a stroke and had difficulty in speaking, although his mental condition was apparently normal, took the certificate of insurance from his home in Willow Grove to the local brotherhood office in the Reading Terminal and informed an officer of the local lodge, Albert J. Hurst, that he wanted to change the beneficiary from his wife to his two daughters and son. Hurst told him he would have to furnish their names and addresses. Decedent was unable to do so at the time, as he was not sure of the address of his stepson, who was then in military service, but he informed Hurst that he would send the names and addresses to him. He then signed the change of beneficiary form printed on the back of the certificate of insurance. His signature was witnessed by Mr. Hurst, who retained the certificate for forwarding to the grand lodge as soon as the names and addresses of the beneficiaries were furnished to him. Such information was never received, however, as decedent

died within 10 days thereafter, during which period he was mostly confined to his bed and unable to leave the house.

The brotherhood paid the proceeds of the policy to the administratrix and decedent's stepchildren excepted to the inclusion thereof in the present accounting, and have also filed a claim thereto on the ground that they are the beneficiaries of said policy and entitled to the said proceeds. Their claim is not admitted by the accountant, and is contested by decedent's heirs at law who contend that there was no effective change of beneficiary and that since the designated beneficiary predeceased decedent, the proceeds were paid to the administratrix in trust for decedent's heirs at law, to wit, his sister (the present accountant) and certain nieces and one nephew.

Before proceeding to a consideration of the merits of the controversy, a technical objection raised by counsel for the accountant must be disposed of. This concerns the admissibility in evidence of a photostatic copy of the certificate of insurance in lieu of the original. It appears from the evidence that the original certificate is in the possession of the grand lodge in Cleveland, Ohio. Since the grand lodge is not a party to these proceedings and since the original certificate is not within the jurisdiction of this Commonwealth, the production of said original could not be compelled by the process of this court. There is no doubt, however, as to the authenticity of the photostatic copy since the official of the local lodge identified same as a true and correct copy of the original which he received from the decedent and subsequently forwarded to the grand lodge. The signature of decedent, appearing on the form of change of beneficiary on the back of the certificate, was identified by the same official who originally witnessed it and was familiar with it. The accountant does not even suggest that there is any

variance between the original and the photostatic copy, but merely relies upon the so-called Best Evidence Rule. This well known principle of law provides that a fact must be proved at a trial by the best evidence obtainable at the time and that no evidence which is merely substitutionary in its nature will be considered as long as the original evidence can be had: 5 Standard Pa. Practice, 159, §75. But where it is shown that the original is beyond the jurisdiction of the court, it constitutes. a satisfactory reason for nonproduction of the original, and in such case, secondary evidence is properly admissible: Henry, Pennsylvania Trial Evidence, 260, §181. Of course, a copy to be admissible in evidence must be properly accredited: Cohen v. Boslover Beneficial Assn., 116 Pa. Superior Ct. 55, 57 (1935). But it would be 'unjustifiably technical' in the instant case to hold the photostatic copy, properly authenticated, could not be received in evidence as the basis of the instant claim. See Koch Election Contest Case, 353 Pa. 619, 623 (1946).

Accordingly, the court is of the opinion that the said photostatic copy of the certificate of insurance was properly admitted in evidence.

The real question here involved is whether decedent's attempted change of beneficiary was legally effective. The test of legal effectiveness, with respect to a not fully completed change in designation of beneficiary, is whether the policy holder made every reasonable effort to effect a valid change of beneficiary: Potter Title and Trust Co. v. Carlson, 160 Pa. Superior Ct. 38, 43 (1946).

Such determination must necessarily depend upon the facts of the particular case: Estate of K. I. Sanes (No. 1), 91 Pa. Superior Ct. 466, 472 (1927). Of the decided cases, the one most nearly resembling the instant case in its factual situation is Tomilio v. Pisco et al., 123 Pa. Superior Ct. 423 (1936). In that case,

decedent, during his last illness, told his nurse that he wished plaintiff to be named beneficiary in his insurance policies. The nurse secured a form for such purpose and decedent made some marks intended to represent his signature in the blank form, but the name of the beneficiary was not filled in by the nurse until after decedent's death. It was held that the writing purporting to change the beneficiary was not void by reason of failure to insert the name of the new beneficiary and the proceeds of the policy were awarded to the intended beneficiary. As stated in the opinion (p. 431):

". . . the writing purporting to change the beneficiary was not void by reason of a failure to insert the name of the new beneficiary and the power reposed in the agents of the International to insert the name was not revoked by the death of the insured. Here by reason of the nature of the transaction and the specific instruction given the agent was not authorized to place in the blank any name but that of the plaintiff and such power was not revoked by death. It was a valid request in writing for a change of beneficiary as required by the policy, operative as of the time International received the request."

Similarly, in Ruggeri et al. v. Griffiths, 315 Pa. 455 (1934), where insured signed a change of beneficiary form in blank and delivered it to the company's agent with oral instructions as to how the proceeds were to be paid and the form was subsequently filled in at the office of the company in accordance with the said instructions and a rider to that effect attached to the policy two days after decedent's death, it was held that the change of beneficiary was legally effective.

Where extreme circumstances render strict compliance with the terms of the policy concerning change of beneficiary a virtual impossibility, substantial and not strict compliance will satisfy the requirements of

the law: Sigora et al. v. Metropolitan Life Insurance Co. et al., 158 Pa. Superior Ct. 498, 502 (1946). Such extreme circumstances are certainly present in the instant case, since decedent was confined to his home by illness during the 10-day period which elapsed between the time he signed the change of beneficiary form and his death. At the time he signed such form, he definitely instructed the official of the local lodge that he desired that his daughters and son be designated as beneficiaries. There is no doubt that such reference was intended to designate his stepchildren, whom he obviously considered as his own. If the official had merely asked for their names, decedent in all likelihood would have furnished same at the time. However, when confronted with the requirement that addresses also be furnished, decedent was uncertain as to the precise address of his stepson, who was then in military service, and instead of furnishing the information piecemeal, decided to send the names and addresses to the local official as soon as possible. This plan unfortunately failed of consummation due to his death which occurred shortly thereafter and before he had an opportunity to forward the necessary information to the lodge official. A careful consideration of all the testimony in the case has convinced the court that decedent intended his stepchildren to be the beneficiaries of his insurance certificate, that he made every reasonable effort to effect a valid change of beneficiary and that strict compliance with the requirements concerning a change of beneficiary was rendered virtually impossible due to the extreme circumstances of decedent's physical condition during the 10 days' period prior to his death but that there was in fact, substantial compliance with the requirements of the policy and of the law with respect to change of beneficiary.

Accordingly, the court holds that claimants, Anna M. Brown, Peter K. Corrigan and Estelle Bytheway are legally entitled to the proceeds of said certificate

of insurance, and the exceptions are, therefore, sustained, the claim is hereby allowed, and the accountant is directed to turn over unto said claimants the sum of $1,500 received by her from the Brotherhood of Railroad Trainmen by virtue of the said certificate of insurance.